AO 91 (Rev. 08/09) Criminal Complaint

**FILED**

MAY 1 2 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 25-mj-399-MTS |
| JOSE LUIS RODRIGUEZ | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 7, 2025__ in the county of __Tulsa__ in the Northern District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) | Possession of Methamphetamine with Intent to Distribute |
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(IV) | Possession of Cocaine with Intent to Distribute |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

William R. Mackenzie, DEA TFO
*Printed name and title*

Sworn to before me by phone.

Date: 5-12-2025

*Judge's signature*

City and state: Tulsa, OK

Mark T. Steele, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of an Arrest Warrant
## in the Northern District of Oklahoma

I, William R. Mackenzie, being duly sworn under oath, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am deputized as a Task Force Officer (TFO) with the Drug Enforcement Administration, United States Department of Justice, and am presently assigned to the DEA Tulsa Resident Office in Tulsa, Oklahoma. I am also a Tulsa Police Department officer and have been so employed for over 24 years. I have a bachelor's degree in criminal justice from East Central University. Since becoming a narcotics detective with TPD's Special Investigations Division (SID), I have participated in wire and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, informant debriefings, and reviews of taped conversations and drug records. From my training, education, and experience, I am familiar with the way illegal drugs are transported, stored, and distributed, methods of payment for illegal drugs, and slang/code words used by those discussing illegal activities related to drug production, processing, transportation, and distribution. I have been the primary investigator in over ten complex conspiracy cases prosecuted within the federal justice system.

2. I received formal training in narcotics investigations from TPD's academy and informal training from more experienced officers. I have also completed:

   a. Oklahoma State Bureau of Investigations Clandestine Laboratory Basic Safety Certification and Clandestine Laboratory Site Safety Officer courses, presented by Network Environmental Systems;

      b. DEA Basic Narcotics Investigator School;

      c. Advanced Undercover Narcotics School;

      d. Southwest Border Intelligence School and Outlaw Motorcycle Gang School, presented by Association of Oklahoma Narcotics Enforcers (AONE);

      e. Complex Conspiracies School, presented by the Midwest Counter-Drug Training Center; and

      f. Communications Exploitations Training, presented by DEA Special Operations Division.

In addition to my own training, I have trained other narcotics detectives within TPD SID and DEA. I also taught an AONE class on heroin distribution in the United States.

    3. I have participated in more than 500 drug-related criminal investigations. I have authored federal Title III affidavits and state and federal search warrants. I have participated in several Title III investigations, purchased narcotics in an undercover capacity on numerous occasions, and executed controlled deliveries of narcotics. I have interviewed hundreds of defendants involved in the use, manufacture, transportation, and illegal sale of controlled dangerous substances. During these interviews, I have inquired and learned how individuals involved in drug distribution scheme and networks use and disperse illegal proceeds generated from the illegal sale of controlled dangerous substances, including but not limited to chemicals commonly used in the illegal manufacture of methamphetamine. Through my involvement in Title III investigations, undercover narcotics buys, and interviews of defendants involved in the use, manufacture, transportation, and illegal sale of

2

controlled dangerous substances, I have become familiar with slang and code words used to refer to the use, manufacture, transportation, illegal sale, quantities, and types of controlled dangerous substances.

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations and participation in this investigation, my training and experience as a TFO for DEA, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, and conversations with others who have personal knowledge of the events and circumstances described herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841(b)(1)(C) - Drug Conspiracy- have been committed by the above-named individuals. The information contained in this Affidavit in support of an arrest warrant for **Jaimie Murillo** is based on the ongoing joint investigation of the DEA, Homeland Security Investigations (HSI), and Tulsa Police Department.

## PROBABLE CAUSE

6. On April 7, 2025, members of the TPD SID served a Tulsa, County search warrant at 2171 South 76th East Place in Tulsa, Oklahoma, Tulsa County, Northern District of Oklahoma.

3

7. During the service of the search warrant, two adults identified as Jose Luis Rodriguez and Elsa Urquiza were safely taken into custody without further incident. Also in the residence was a small child.

8. During a search of the residence investigators located two brick shaped packages consistent with kilogram quantities of cocaine and a quantity of crystal substance consistent with methamphetamine in the attic within the residence. The suspected cocaine had a weight of over two kilograms. The suspected methamphetamine had a weight of over 500 grams. Investigators conducted a field-test on the suspected cocaine and received a presumptive positive result for cocaine. Investigators conducted a field-test on the suspected methamphetamine and received a presumptive positive result for methamphetamine.

9. During a search of a gold Toyota Camry parked in the driveway of the residence, investigators located over 150 grams of a crystal substance consistent with methamphetamine, over 200 grams of a white substance consistent with cocaine, and a functional digital scale in the center console of the vehicle. Investigators conducted a field-test on the suspected methamphetamine and received a presumptive positive result for methamphetamine. Investigators conducted a field-test on the suspected cocaine and received a presumptive positive result for cocaine.

10. Investigators know from their training and experience that drug traffickers commonly have digital scales that they utilize to distribute their controlled substances. Investigators know that drug traffickers will commonly purchase larger

quantities of controlled substances, separate the substance into smaller quantities, weigh out the smaller quantities, and package them for distribution.

11. Tulsa Police Investigator Issac Marquez read Jose Rodriguez his Miranda Warning in Spanish from a Tulsa Police Department issued card. Investigator Marquez is a fluent Spanish speaker and during the interview with Rodriguez, Rodriguez stated that he lived at 2171 South 76th East Place in Tulsa, Oklahoma. Rodriguez stated he and his wife were currently unemployed. Rodriguez stated he had no drugs in the residence and ultimately told officers he had drugs in his Toyota Camry parked in the driveway in the center console.

12. Investigators transported all evidence to the TPD SID where it was processed, packaged and turned in on property receipt BX5211 per TPD policies and procedures.

13. Rodriguez was booked into the Tulsa County jail.

## CONCLUSION

Based on the information set forth in this affidavit, I submit there is probable cause to believe that **Jose Luis Rodriguez** committed violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) – Possession of Methamphetamine with Intent to Distribute and of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(IV) – Possession of Cocaine with Intent to Distribute, and respectfully request an arrest warrant be issued.

Respectfully submitted,

_William M._
William R. Mackenzie
Task Force Officer
DEA

Subscribed and sworn via phone on the 12 day of May, 2025.

_signature_
Mark T. Steele
UNITED STATES MAGISTRATE JUDGE

6